**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE J., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-12515 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Danielle J.'s ("Plaintiff")[1] appeal from the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her request for disability insurance benefits. (Compl. ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's appeal is granted.

I.  **BACKGROUND**

In this appeal, the Court must determine whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.     **Procedural History**[2]

On June 1, 2017, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning September 30, 2014. (AR 10, 178-95.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 10, 106-11, 114-16.) Thereafter, Plaintiff had a hearing before the ALJ on July 15, 2019. (*Id.* at 10, 30-73, 119-20, 136.) At the hearing, Plaintiff amended her alleged disability onset date to March 1, 2016. (*Id.* at 10, 38.) Following the hearing, the ALJ issued a decision denying Plaintiff's DIB application and finding that she was "not disabled." (*Id.* at 10-22.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-3.) Plaintiff then filed an appeal to this Court. (*See generally* Compl., ECF No. 1.) On March 17, 2022, Plaintiff submitted her moving brief in this action. (ECF No. 17.) The Commissioner opposed (ECF No. 24), and Plaintiff replied (ECF No. 25).

B.     **The ALJ's Decision**

In his September 17, 2019, written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 10-22.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 11-12.) At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity" during the relevant period. (*Id.* at 12.) At step two, the ALJ determined that Plaintiff had several severe impairments, including: degenerative disc disease with radiculopathy; spondylosis; migraine headaches; complex regional pain syndrome (lower extremities and upper extremities); synovitis (left wrist); tendinitis (left ankle); tachycardia;

---

[2] The Administrative Record ("AR") is located at ECF Nos. 10 through 10-9. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

2

attention-deficit/hyperactivity disorder ("ADHD"); and anxiety. (*Id.* at 13.) Despite the ALJ finding some of Plaintiff's impairments severe, he ultimately determined during his step-three analysis that those impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-16.) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC") to do (or not do) the following:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds; never be exposed to unprotected heights or hazardous machinery; never crawl; and no more than occasionally climb ramps and stairs, kneel, stoop, balance, and crouch. The claimant can no more than occasionally reach overhead and no more than frequently reach in all other directions. The claimant can frequently finger and handle with her upper extremities. The claimant cannot have exposure to extremes in vibrations, noise, environmental conditions or concentrated pulmonary irritants. The claimant must be able to wear shaded lenses during work hours. The claimant is able to do only simple and routine tasks. The claimant can sit for up to six hours in an eight-hour workday, with the option to stand or change positions; and she can stand and/or walk for up to two hours in an eight-hour workday.

(*Id.* at 16.) At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at 20.) At step five, the ALJ found that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.* at 22.) The ALJ, consequently, found that Plaintiff was not under a disability from the filing date through the last date insured. (*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g);

3

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the review must be a qualitative exercise requiring thorough examination of the ALJ's decision and the record:

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). It is, thus, necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220

F.3d 112, 119-20 (3d Cir. 2000). If the ALJ has not done this and has not sufficiently explained the weight given to the evidence, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citation omitted). The ALJ must state both the evidence that he considered as well as the evidence that he rejected. *Cotter v. Harris*, 642 F.2d 700, 706-707 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.")[3] (internal citation omitted).

**B.     Establishing Disability**

To be eligible for DIB, a claimant must be unable to "engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

---

[3] The ALJ need not, however, undertake an exhaustive discussion of the evidence. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

For the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). If the first two steps are satisfied, the third requires the claimant to provide evidence that her impairment "meets or equals" an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates sufficient evidence under the third step, she is presumed to be disabled and is automatically entitled to disability benefits. *See id.* If she cannot so demonstrate, however, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can continue the work that she performed pre-impairment, then she is not "disabled" and not entitled to disability benefits. *See* 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(g).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her RFC, age, education, and past work experience. *See id.*; *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *See* 20 C.F.R. § 404.1520(g).

**III.   DISCUSSION**

Plaintiff appeals the ALJ's written decision and raises four main arguments. First, Plaintiff alleges that the ALJ improperly evaluated the medical evidence at step three. (Pl.'s Moving Br. 26-37, ECF No. 17.) Second, that the ALJ erred in finding that Plaintiff can perform less than sedentary work at step four. (*Id.* at 37-42.) Third, that the ALJ failed to properly evaluate the RFC at step four. (*Id.*) And fourth, that the ALJ failed to properly assess the testimony of a vocational expert at step five. (*Id.*)

As explained in detail below, the Court cannot conclude that the ALJ's assessment of Plaintiff's impairments, at step three, is supported by substantial evidence. The Court, accordingly, does not evaluate Plaintiff's arguments raised related to step four and step five of the analysis, as these are more appropriately reconsidered on remand.

**A.   The ALJ Did Not Properly Evaluate All of Plaintiff's Medical Evidence.**

Plaintiff presents several categories of medical evidence that she claims the ALJ improperly evaluated. The Court addresses each contested medical category below.

*1.   Fibromyalgia*

Plaintiff first contends that the ALJ erred in finding that her fibromyalgia is not a medically determinable impairment ("MDI"). (Pl.'s Moving Br. 27-29.) Specifically, Plaintiff indicates that "[m]ultiple licensed medical physicians . . . have diagnosed fibromyalgia based upon [her] medical history," and, in fact, she has an "established diagnosis by [her] physicians." (*Id.* at 27-28.) Plaintiff details the portions of her medical history that support her diagnosis of fibromyalgia, including fatigue, fibro fog, unrefreshed sleep, insomnia, depression, and anxiety disorder. (*Id.* at 28.)

Contrary to Plaintiff's assertion, a plain reading of the written decision reveals that the ALJ did consider this issue before making his findings. In particular, the ALJ noted that fibromyalgia was mentioned as a "working diagnosis," but the medical record did not confirm that Plaintiff

meets the requirements of SSR 12-2p,[4] as necessary to find an MDI of fibromyalgia. (AR 13.) The ALJ, furthermore, noted that there was no evidence that Plaintiff's medical doctors excluded other impairments that may have caused her symptoms as required by SSR 12-2p. (*Id.*; *see also* SSR 12-2p, 2012 WL 3104869, at *3 (Jul. 25, 2012) (explaining that one of the requirements in establishing that a claimant's fibromyalgia is an MDI is that other disorders that could have caused the symptoms or signs were excluded).) And even beyond the ALJ's decision, a mere diagnosis of fibromyalgia does not mean that the fibromyalgia is an MDI. *See* SSR 12-2p, 2012 WL 3104869, at *2 ("We cannot rely upon the physician's diagnosis alone.").

The Court, accordingly, finds that the ALJ's evaluation and findings regarding Plaintiff's fibromyalgia were supported by substantial evidence.

  2.  *Listing 1.02*

Plaintiff next avers that the ALJ improperly found that her impairments did not meet Listing 1.02, Major Dysfunction of a Joint. (Pl.'s Moving Br. 29-30.) Plaintiff attempts to substantiate this by describing her joint pain, nerve damage, complained range of motion, wrist injury, and chronic pains. (*Id.*)

To meet Listing 1.02, Plaintiff must show evidence of: (1) involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate effectively; or (2) involvement of one major peripheral joint in her upper extremity resulting in inability to perform fine and gross movements effectively. (Def.'s Opp'n Br. 16; 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.02.) After setting forth the regulatory requirements, in determining whether Plaintiff met the requirements of Listing 1.02, the ALJ wrote only one sentence: "The claimant's impairments do

---

[4] Social Security Ruling, SSR 12-2p provides guidance on how to develop evidence to establish that a person has an MDI of fibromyalgia, and how to evaluate fibromyalgia in disability claims. SSR 12-2p, 2012 WL 3104869, at *3 (Jul. 25, 2012).

not meet these conditions." (AR 14.) While this sentence, standing alone, is insufficient to show that the ALJ "analyze[d] all probative evidence and set out the reasons for his decision," consideration of the record as a whole demonstrates that the ALJ did consider the relevant facts. *See Burnett*, 220 F.3d at 119-20. For example, the ALJ discussed several different medical records that reflected Plaintiff's "ability to perform household chores including cleaning laundry, meal preparation, and garbage removal." (AR 16-19.) The ALJ also mentioned medical records that showed "musculoskeletal motion and muscle strength . . . were well within functional limits, intact coordination and sensation, a normal walking gait, and independent ambulation." (*Id.*) These facts support the finding that Plaintiff's impairments do not meet the Listing 1.02 requirements.

The Court, accordingly, finds that the ALJ's evaluation and findings regarding Plaintiff's impairments related to Listing 1.02 were supported by substantial evidence.

### 3. *Listing 1.04*

Plaintiff similarly contends that the ALJ improperly found that her impairments did not meet Listing 1.04. (Pl.'s Moving Br. 30-31.) Specifically, Plaintiff points to several medical records showing mild canal stenosis, mild central canal stenosis, mild to moderate canal stenosis with a deformity of the ventral aspect of the spinal cord, a small disc bulge, a cord deformity, and a sizable central disc herniation abutting and indenting the spinal cord. (*Id.*)

There are several ways to meet the requirements of Listing 1.04, one of which is: "(A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test." (20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00E1, Listing 1.04(A).) Again, in a conclusory manner, in determining whether Plaintiff met the requirements of Listing 1.04, the ALJ wrote only one sentence: "The claimant does not meet or medically equal the severity of criteria enumerated in listing 1.04 for disorders

of the spine because the record does not establish evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (AR 14.)

Evaluating the record as a whole, the ALJ does eventually address some of the facts related to Plaintiff's spinal impairments. For example, the ALJ spends time discussing Plaintiff's lumbar spine, noting a negative straight-leg raising test and "reasonably good range of motion in the lumbar spine." (*Id.* at 18-19.)

The ALJ, however, did not sufficiently evaluate the impairments related to Plaintiff's cervical spine. The ALJ concluded that there was no "evidence of nerve root compression," when Plaintiff's medical records demonstrate oftentimes significant spinal stenosis. (*Id.* at 14; Pl.'s Moving Br. 30-31 (citing the relevant medical records).) The only attention the ALJ gave to Plaintiff's cervical spine impairments was to note that Plaintiff "underwent a discectomy and spinal fusion surgery at the C3-C4 level of her cervical spine" and to demonstrate how her cervical spine impairments impact her RFC (*e.g.*, claimant's "cervical degenerative disc disease requiring fusion surgery supports the conclusion that the claimant should never climb ladders, ropes or scaffolds . . . ."). (AR 18-19.)

The ALJ failed to address both the evidence that he considered as well as the evidence he rejected related to the cervical spine, so it is impossible for the Court to evaluate whether the reasons for his findings were proper. *See Cotter*, 642 F.2d at 704 ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Because the ALJ improperly assessed probative evidence supporting the alleged disability, the Court cannot conclude that the assessment of Plaintiff's physical impairments related to the cervical spine is supported by substantial evidence. The Court also concludes that this claimed error is cause for

remand because the record suggests that proper consideration may have resulted in a disability finding at step three.

        4.     *Migraines*

Plaintiff next argues that the ALJ improperly considered her migraine headaches under Listing 11.02 rather than referring to SSR 19-4p which also aids in the determination of whether migraines are an MDI. (Pl.'s Moving Br. 31.) Plaintiff then discusses the guidance in SSR 19-4p, seeking to demonstrate that her migraines meet the criteria of an MDI.

Plaintiff, however, fails to note that the guidance in SSR 19-4p specifically states that evaluation of an MDI of a primary headache disorder is not a listed impairment, and that Listing 11.02 is "the most closely analogous listed impairment for an MDI of a primary headache disorder." SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). SSR 19-4p then describes how to evaluate a headache disorder under Listing 11.02. *See id.* This is precisely what the ALJ did. (AR 14.) The ALJ evaluated Plaintiff's migraines according to Listing 11.02 and concluded that "the record does not support a finding that the claimant experienced migraines with the frequency required by this listing." (*Id.*)

The Court, accordingly, finds that the ALJ's evaluation and findings regarding Plaintiff's migraines were supported by substantial evidence.

        5.     *Left Wrist*

Plaintiff further challenges the ALJ's consideration of the injury to her left wrist and the ALJ's conclusion that the injury was subsequently resolved. (Pl.'s Moving Br. 33.) Plaintiff maintains that this injury has not resolved, noting a diagnosis of ulnar neuropathy, which eventually spread to both her legs. (*Id.*) She notes chronic tingling and burning in her extremities with skin color changes, as well as epidural injections for relief. (*Id.*)

The ALJ sufficiently considered Plaintiff's injury to her wrist. The ALJ specifically evaluated the injury and referenced subsequent examinations that documented "normal musculoskeletal functioning, including a full range of motion throughout [Plaintiff's] left shoulder." (AR 18.) The ALJ additionally noted an x-ray of Plaintiff's wrist taken after the injury showing no evidence of a fracture. (*Id.*)

The Court, accordingly, finds that the ALJ's evaluation and findings regarding Plaintiff's wrist impairment were supported by substantial evidence.

      6.    *Mental Impairments*

Plaintiff also argues that the ALJ improperly evaluated her mental impairments (ADHD and anxiety), concluding that Plaintiff was able to "perform household chores, cleaning, laundry, meal preparation, and garbage removal." (Pl.'s Moving Br. 34.) The Court is unclear how Plaintiff links these activities to any evaluation of her mental impairment, as the ALJ did not consider them under this category. (*See* AR 14-16 (the ALJ's evaluation of Plaintiff's mental impairments).)

The ALJ appropriately evaluated Plaintiff's mental impairments. First, the ALJ outlined the listing requirements to find a mental impairment as an MDI. (AR 14.) To satisfy the requirement criteria, the mental impairment "must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (*Id.*) The ALJ then proceeded to evaluate each one of these areas as it related to Plaintiff's activities. (*Id.* at 14-16.) For example, the ALJ noted that Plaintiff "was able to identify a variety of personal information without difficulty, three of three objects both immediately and after a brief delay, and . . . six digits forward and three digits in reverse." (*Id.* at 14.) The ALJ referenced separate objective examinations that documented "intact memory activity." (*Id.*) The ALJ also noted sufficient memory function for Plaintiff to "play board games,

12

solve puzzles, manage her own finances, and generally take care of herself." (*Id.* at 14-15.) The ALJ evaluated Plaintiff's ability to interact with others, as well as her concentration and ability to complete tasks. (*Id.* at 15.)

The Court, accordingly, finds that the ALJ's evaluation and findings regarding Plaintiff's mental impairments were supported by substantial evidence.

### 7. Medication Side Effects

Finally, Plaintiff complains that the ALJ failed to consider the side effects of her medications and how they impacted her ability to work. (Pl.'s Moving Br. 36-37.) Plaintiff explains the medications she has taken and is taking, and explains how many of them do not work. (*Id.*) Plaintiff, however, fails to describe which symptoms the ALJ failed to consider. And in any event, the ALJ must consider symptoms, but is not required to credit them. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). The Court, accordingly, finds that the ALJ appropriately considered Plaintiff's symptoms.

Based on its review of the ALJ's decision and its analysis of the specific records, this Court finds substantial evidence supports many, but not all, of the ALJ's findings. Because portions of the ALJ's findings and conclusions are not supported by substantial evidence, the Court remands the case to the Commissioner.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Plaintiff's appeal and remands the matter. An Order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE